# STEVE ZISSOU

Attorney at Law
42-40 Bell Boulevard, Suite 302
Bayside, New York 11361
(718) 279-4500
Email: stevezissou@verizon.net

March 24, 2007

Honorable Jack B. Weinstein
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> *[Handwritten note:] The submission of the United States Attorney is requested ASAP. So ordered. 3/27/07*

      Re:   <u>United States of America v. Nelson Correa</u>
             Criminal Docket No.   03-427 (JBW)

Dear Judge Weinstein:

On January 11, 2005, Nelson Correa was sentenced to 5 years probation following his guilty plea to aiding and abetting the filing of a false tax return in violation of Title 26 U.S.C §7206(2). The other parts of the sentence included: 12 months of home confinement; a fine of $30,000.00; and restitution of $24,000.00. Mr. Correa has paid the fine and restitution and has completed the home confinement portion of his probation. He has been on probation for 26 months.

For the reasons set forth below, I write today to request that the Court terminate Mr. Correa from probation.

### Background of the Offender and the Underlying offense

Nelson Correa is a 45 year old Father of four currently residing in Kissimmee, Florida. He lives with his wife of 27 years, Griselda Correa, along with three of his children and two of his grandchildren. Mr. Correa is the primary source of financial support for all of his children and grandchildren. His wife is a homemaker. Mr. Correa also is the primary caretaker for his grandmother, Margarita Rivera. Ms. Rivera resides in Kissimmee with Mr. Correa and his family. She is 85 years old and suffers from a variety of medical ailments including diabetes and heart disease. Like his children, Mr. Correa is his grandmother's primary means of support. Mr. Correa was born in Brooklyn, New York, but was raised in Puerto Rico by Ms. Rivera and her husband.



As is demonstrated in the presentence investigation report prepared in this case, Mr. Correa has a long history of gainful employment that reflects his commitment to his family. Commencing in late 1995, Mr. Correa began a small business that he hoped would produce additional income for his family. He called his new venture "Big Apple Enterprises" which he incorporated in 1995. The business was designed to assist taxpayers in the preparation of yearly tax returns. Although the business started off slowly, a rapid and unanticipated increase in clients led to his running afoul of the Internal Revenue Service. In short, Mr. Correa failed to take steps to ensure the quality and accuracy of the returns being prepared by the many part time employees who worked for Big Apple. In subsequent years, Mr. Correa instituted the controls necessary to prevent the business from aiding the preparation of false returns. Nevertheless, Mr. Correa accepted responsibility for the acts and omissions that occurred in earlier years. As part of the settlement of this case, he agreed to leave the tax preparation business and, on April 21, 2004, before the Honorable Robert M. Levy, Mr. Correa pleaded guilty to aiding and abetting the preparation of a false tax return in violation of Title 26 of the United states Code § 7206.

Now just 45 years old, Mr. Correa's work history stretches back to the 1970's when he was employed as a machinist on an assembly line in New Haven Connecticut and continues to the present. Prior to forming Big Apple Enterprises, Mr. Correa worked a number of full and part-time jobs in various sectors of the economy. He was employed as a chef at Lenny's Clam Bar and worked as a cook for over 10 years. He also was employed as an Emergency Medical Technician; wire inspector; laborer and as a machinist. For the last two years, Mr. Correa's has managed a small convenience store in Florida near his home.

In 1975 Mr. Correa met his future wife, Griselda Rivera. They married in 1978. Mrs. Correa has never been employed outside their family home. They are raising 4 children and 2 grandchildren. Thelma (age 25), Miriam (age 23), Damaris (age 21) a full, time student and Enrica (age 20) also a full, time student. As noted in the presentence report, they are a very close family. Mr. Correa is the primary financial provider for the family. He has no prior convictions.

Mr. Correa has now been under the supervision of the United States Probation Department for 26 months. During this time period he has fully complied with all of the conditions imposed upon him and has continued adding to his long history of gainful employment and devotion to his extended family. Taken together, these factors, suggest that early termination from probation would be consistent with the sentencing goals enunciated in 18 U.S.C. 3553(a).

I have advised the attorney for the government, Taryn Merkl, Esq., of my intention to make this application and she advises me that the government *"takes no position."* I have also advised United States Probation Officer Julio Dominguez, who is currently supervising Mr. Correa, of this request and he advises me that he believed that his department would object because, in their view, Mr. Correa tested positive for drugs approximately two years ago.

I was acting as Mr. Correa's attorney at the time that this test was conducted and discussed the results with him. Based upon my investigation of the circumstances, it is my view that the test was a "false positive" and should not form the basis for a denial of our request for early termination. Among the reasons for my conclusion is the fact that since his arrest in this case in October of 2003, Mr. Correa has been drug tested more than a dozen times. *All* of these tests came back negative with the exception of one single test. It is my understanding that this test was administered on a day when Mr. Correa visited his dentist and received injections for pain killing medication.

In addition, when Mr. Correa was confronted with the test results by his supervising officer, he denied drug use even after he was threatened with a violation if he did not agree to drug counseling. At the time, I spoke to his USPO and informed him that in the many years that I had know Mr. Correa, dating back to 1997, I had never known him to have a drug problem or to use illegal drugs of any kind. I offered to have the sample retested by an independent laboratory. However, since the officer did no file a violation, we did not do so. Instead, the officer had Mr. Correa tested repeatedly during the days and weeks that followed with no further negative tests reported. In fact, just this month, Mr. Correa traveled to New York from his home in Florida to meet with me and as soon as he arrived he was unexpectedly tested by a local United States Probation Officer. It is my understanding that this test was also negative.

### Legal Argument

The Court's authority to terminate a sentence of probation is well settled. Such authority is codified by section 3564(c) of Title 18 of the United States Code which provides, in pertinent part, as follows:

> **(c) Early Termination** - The court, after considering the factors set forth in section 3553(a) to the extent that they are applicable, may, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, terminate a term of probation

> previously ordered and discharge the defendant at any time . . . after the expiration of one year of probation in the case of a felony, if it is satisfied that such action is warranted by the conduct of the defendant and the interest of justice.

The primary directive in Section 3553(a) is for sentencing courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2." Section 3553(a)(2) states that the purposes are:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense:
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In determining the minimally sufficient sentence, Section 3553(a) further directs sentencing courts to consider the following factors:

> 1) "the nature and circumstances of the offense and history and characteristics of the defendant" [§ 3553(a)(1)];
> 2) "the kinds of sentences available" [§3553(a)(3)];
> 3) "the need to avoid unwarranted sentence disparities among the defendants with similar records who have been found guilty of similar conduct [§ 3553(a)(6)]; and
> 4) "the need to provide restitution to any victims of the offense." [§ 3553(a)(7)].

Furthermore, the Supreme Court has recognized the district court's "special competence" when it comes to imposing sentence:

> The district court must make a refined assessment of the many facts bearing on the outcome, informed by its vantage point and day-to-day experience in criminal sentencing. . . . District courts have an institutional ad vantage over appellate courts in making these sorts of determinations. . . ."To ignore the district court's special competence--about the 'ordinariness' or 'unusualness'of a

>particular case--would risk depriving the Sentencing Commission of an important source of information, namely, the reactions of the trial judge to the fact-specific circumstances of the case. . . ."

*Koon v. United States* 116 S. Ct. 2035 (1996) at 2046-47, citing, *United States v. Rivera*, 994 F.2d at 951.

In *United States v. Galante*, 111 F.3d 1029 (2d. Cir. 1997), the Court of Appeals reaffirmed that the District Courts have broad discretion in the determination of the appropriate sentence:

>What is "exceptional" is--like the beauty of Botticelli's "Venus Rising From the Sea" - a subjective question because the overall conclusion is one resting in the eye of the beholder. . . Hence, the sentencing court serves as the "eye of the comparer". . . as an appellate court, we owe substantial deference to the district court's findings in this regard because they result from the traditional exercise of its more informed discretion.

*Galante*, supra, at 1034.

## CONCLUSION

For all the reasons stated, the Court should terminate Mr. Correa from probation. Such relief would comply with the statutory mandate to impose a sentence that is "sufficient, but not greater than necessary" to provide "just punishment, adequate deterrence," and to "protect the public.... in the most effective manner." 18 U.S.C. § 3553(a).

Thank you for your consideration in this matter.

Respectfully Submitted,

Steve Zissou

cc:   AUSA T. Merkl
      USPO J. Dominguez